UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **BRYAN E. RANSOM,**<br>　　　　　　　　　　　Plaintiff,<br>v.<br>**TERRENCE F. SHEEHY ET AL.,**<br>　　　　　　　　　　　Defendants. | CASE NO. 07cv01598 BEN (PCL)<br><br>**REPORT & RECOMMENDATION GRANTING DEFENDANTS' MOTION TO DISMISS (Doc. 16.)**<br><br>[FED. R. CIV. P. 12(b)(6)] |

**I.**

**INTRODUCTION**

On December 10, 2007, Plaintiff Bryan E. Ransom ("Plaintiff"), a prisoner proceeding pro se and in forma pauperis, filed a First Amended Complaint (FAC) against Defendants Peterson, Cobb, Scribner, and Van Cleave for violation of his civil rights under Title 42, United States Code § 1983 and various rights under California law. (Doc. 5.) On April 7, 2008, Defendants moved to dismiss Plaintiff's FAC for failure to exhaust his administrative remedies, for failure to state a claim, on qualified immunity grounds, and for failure to comply with state law requirements. (Doc. 16-2, at 6.) Upon review of the FAC, Defendants' motion, and the responses, the Court recommends that Defendants' motion be GRANTED and that Plaintiff's FAC be dismissed.

1

## II.

## BACKGROUND

Plaintiff, an inmate at High Desert State Prison, filed a section 1983 complaint alleging that various officials at the Corcoran State Prison ("Corcoran") and R.J. Donovan State Prison ("RJD") violated his right to be free from retaliatory punishment for engaging in conduct protected by the First Amendment, violated his right of self-representation under the Sixth Amendment, and violated various rights under California law. (Doc. 5, at 2.)

Plaintiff alleges that on June 23, 2006, the U.S. District Court for the Southern District of California issued Defendant Scribner, the Warden at Corcoran, a writ of Habeas corpus ad testificandum to produce Plaintiff before the court on July 28, 2006 for "pre-trial hearings and subsequent trial proceedings." (Id. at 5.) However, in retaliation for "jailhouse lawyering, grievances, and prison activism," Plaintiff asserts that Defendant Scribner intentionally transferred Plaintiff to a housing unit in the administration segregation facility of the RJD without access to a law library, in an effort to hinder Plaintiff's ability to effectively handle his pending civil case against officials at Calipatria State Prison. (Id. at 6-9.)

After Plaintiff's transfer to RJD on July 19, 2006, Plaintiff alleges that he met with Defendant Cobb, the litigation coordinator at RJD, on July 30, 2006 to request access to the law library at RJD. (Id. at 8.) Plaintiff asserts that upon disclosure of his pending lawsuit against officials at Calipatria State Prison, Defendant Cobb "refused to make arrangements for Plaintiff to gain access of [the] law library." (Id. at 9.) On August 3, 2006, Plaintiff alleges he submitted an inmate request form to Defendant Peterson, the law librarian at RJD, informing Defendant Peterson of his August 8th court deadline and formally petitioning for access to the law library. (Id. at 10.) Plaintiff asserts that Defendant Peterson denied his request, citing that the prisoners in his housing unit were restricted access to the law library. (Id.)

On August 6, 2006, Plaintiff maintains that he filed an Emergency CDC 602 appeal, concerning his court deadlines and inability to gain access to the law library. (Id. at 14.) Plaintiff claims that Defendant Van Cleave, Academic Vice Principle at RJD, "intercepted, denied, and withheld" Plaintiff's

1  appeal for four months until Plaintiff finished litigating his case and subsequently lost his suit. (Id. at
2  14.)
3       Plaintiff's first appeal was denied on September 21, 2006, on the grounds that the cases Plaintiff
4  requested were available in the library, and that Plaintiff failed to file the necessary request of transfer to
5  a housing unit that allowed access to the library. (Doc. 16-3, at 5-7.) The denial also stated that the
6  "[t]he mail at this Institution sometimes takes three to four weeks to be delivered. Your request to come
7  to the library was not received by the library until September 11, 2006, where it was found in the Ad-
8  Seg mailbox. When the alpha roster was checked, it was noted that [the prisoner] had been transferred
9  to Corcoran." (Id. at 7.) Plaintiff allegedly received the denied appeal on December 6, 2006. (Doc. 5,
10 at 14.) Plaintiff resubmitted the appeal form for the second level review on December 12, 2006. (Id.)
11 On March 23, 2007, Plaintiff's second appeal was granted, calling the first formal level of review denial
12 as "an inappropriate response." (Doc. 16-3, at 8.) The second level appeal response stated that legal
13 materials are available for inmates in administration segregation. (Id. at 8-9.) The decision further
14 stated that "[a]ny delays in providing materials to the inmate were addressed in the First Level Review
15 and any delay is not the policy at RJDCF." (Id.) The decision also acknowledged that Plaintiff's
16 request to be transferred back to Corcoran was granted. (Id. at 9) The decision concluded by advising
17 Plaintiff that "this issue may be submitted for a Director's Level of Review if desired." (Id.) However,
18 Plaintiff did not file an appeal at the Director's level, reasoning that his administrative remedies were
19 "sufficiently exhausted at the second level of review." (Doc. 29, at 3.)
20       In the instant lawsuit, all defendants have been sued in their individual capacities. (Doc. 5, at 3-
21 4.) All defendants have been sued for violations of Plaintiff's First Amendment rights, Sixth
22 Amendment rights, and retaliatory conduct in violation of state tort law. (Id. at 15-18.) Plaintiff has
23 requested (1) a declaratory judgment that defendants violated his rights under the First and Sixth
24 Amendments; (2) compensatory and punitive damages; (3) appointed counsel and attorney fees; and (4)
25 any and all other relief the court sees fit. (Id. at 18-21.)
26 ///
27 ///
28 ///

## III.

## STANDARD OF REVIEW

FED. R. CIV. P. 12(b) expressly enumerates a list of six defenses that can be asserted in a motion to dismiss, including for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b). Under 12(b)(6), a complaint may be dismissed for failure to state a cognizable legal theory or for failure to state sufficient facts under a cognizable legal theory. See Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). More particularly, failure to comply with particular state requirements — for instance, the claims-presentation requirements of the California Tort Claims Act — is a proper ground for a 12(b)(6) dismissal. Haywood v. City of Pasadena, 1991 WL 100534, at *2 (9th Cir. June 4, 1991). Furthermore, litigants may also base a 12(b) motion to dismiss on the nonenumerated defense of failure to exhaust nonjudicial remedies. Wyatt v. Terhune, 315 F.3d 1108, 1120 (9th Cir. 2003).[1]

The evidentiary standard employed in deciding a motion to dismiss may be different depending on the specific type of defense asserted. For example, matters outside the pleadings are not to be considered in a FED. R. CIV. P. 12(b)(6) motion. See Swedberg v. Marotzke, 339 F.3d 1139, 1146 (9th Cir. 2003). On the other hand, the court may look beyond the pleadings and resolve disputed issues of fact on a nonenumerated 12(b) motion to dismiss for failure to exhaust administrative remedies, with the defendant bearing the burden of proof. Wyatt, 315 F.3d at 1119-20; see Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 369 (9th Cir. 1988) (permitting the consideration of affidavits submitted by the parties on a motion to dismiss for failure to exhaust nonjudicial remedies).

## IV.

## DISCUSSION

**A. Plaintiff Failed to Exhaust His Administrative Remedies**

Defendants Scribner, Cobb, Peterson, and Van Cleave each contend that Plaintiff has failed to properly exhaust his administrative remedies before filing suit in federal court. (Doc. 16-2, at 8.) The Prison Litigation Reform Act (PLRA) requires inmates to exhaust any available administrative remedies before filing suit in federal court. See 42 U.S.C. § 1997e(a). The administrative remedies that the

---

[1] If the court finds that the prisoner has failed to exhaust nonjudicial remedies, "the proper remedy is dismissal of the claim without prejudice." Wyatt, 315 F.3d at 1119.

1 inmate must exhaust are the prison grievance procedures established by the particular prison. Jones v.
2 Bock, 127 S. Ct. 910, 923 (2007). In California, an inmate grievance procedure consists of four steps:
3 (1) attempted informal resolution; (2) first level formal appeal; (3) second level formal appeal; and (4)
4 third level or Director's level appeal. Cal Code Regs. tit. 15 § 3084.5. An inmate exhausts his claim
5 after receiving a decision from the third level or Director's level appeal. Woodford v. Ngo, 548 U.S. 81,
6 85 (2006). A prisoner must exhaust all administrative remedies even if the grievance process does not
7 offer the specific relief that the prisoner requests. Booth v. Churner, 532 U.S. 731, 741 (2001).

8 Here, Plaintiff has not exhausted his administrative remedies. According to the appeal records of
9 the California Department of Corrections and Rehabilitation (CDCR) and a declaration filed by N.
10 Grannis, Chief of Inmate Appeals Branch, Plaintiff has not sought relief at the Director's level of review
11 for his claims of retaliation against the Defendants. (Doc. 16-4.) Plaintiff does not dispute this fact.
12 (See Doc. 29, at 2-3.) Rather, Plaintiff argues that because his second level appeal was granted, he has
13 effectively exhausted his administrative remedies given that it would be unreasonable to appeal a
14 decision that he has "won." (Id. at 3.) Plaintiff cites a district court case, Gomez v. Winslow, 177 F.
15 Supp. 2d 977 (N.D. Cal. 2001), for the proposition that a prisoner need not fully exhaust administrative
16 remedies where pursuing review of a claim at the Director's level would provide no relief at all to the
17 prisoner. Id. at 983-84.

18 However, Plaintiff's reliance on Gomez is misplaced. In Woodford v. Ngo, the Supreme Court
19 determined that an inmate whose claim is denied or "*otherwise is dissatisfied with the result*" at the
20 second level of appeal must still satisfy the third level or Director's level appeal in order to properly
21 exhaust his claims. 548 U.S. at 85 (emphasis added). "[A] prisoner must now exhaust administrative
22 remedies even where the relief sought – monetary damages – cannot be granted by the administrative
23 process." Id. An exception has been carved out by the Ninth Circuit in Brown v. Valoff, 422 F.3d 926
24 (9th Cir. 2005). The court held that a "prisoner need not press on to exhaust further levels of review
25 once he has either received all available remedies . . . or been reliably informed by an administrator that
26 no remedies are available." Brown, 422 F.3d at 935. The case cited by Plaintiff – Gomez – similarly
27 pointed out that such an exception applies in the instance where no further remedy would be available
28 and where the prisoner is discouraged from "pursu[ing] his grievance to another level." Gomez, 177 F.

Supp. 2d at 985.  In the instant case, Plaintiff's appeal was "granted" at the second level of review. However, the officials at the second level of review merely stated that his request to be transferred back to Corcoran was granted and that the housing unit where Plaintiff resided at RJD had access to the library – a point initially denied by the first-level reviewers, who said that Plaintiff should have requested a transfer to another housing unit where library access was provided.  In the appeal response, Plaintiff also was invited to seek further review of his claim so as to allow the prison system to further investigate whether prison officials had violated his access rights.  But Plaintiff did not further press his claim that he was denied access to the law library by prison officials in violation of his constitutional rights to the Director.  Even if Plaintiff would not have been able to obtain monetary relief through the administrative review process, he could have still obtained a ruling from the Director that the prison system violated his rights.   Thus, the exception to the exhaustion rule is not applicable here.  Because Plaintiff failed to exhaust his administrative remedies against all named Defendants at the Director's level of review, his FAC should be dismissed.

**B. Plaintiff States a Sufficient Causal Connection Between Scribner and the Alleged Wrongs**

Defendant Scribner claims that Plaintiff has failed to state a causal connection between the alleged claims – denial of access to the courts, denial of access to the law library, and denial of self-representation – and Defendant Scribner's actions. (Doc. 16-2, at 9.)  Specifically, Defendant Scribner asserts that Plaintiff failed to allege that Defendant Scribner was "personally involved" or "had personal knowledge" of the alleged wrongs asserted by the Plaintiff.  (Id.)

Liability under § 1983 attaches only when the defendant personally participated in or had personal knowledge of the alleged violation.  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); Barry v. Ratelle, 985 F. Supp. 1235, 1239 (S.D. Cal. 1997).  Plaintiff alleges that Defendant Scribner made arrangements with the CDCR Transportation Coordinator and the Warden at RJD to transfer Plaintiff to a housing unit in RJD without access to a law library in an effort to hinder Plaintiff's pending civil suit. (See Doc. 5, at 6.)  Plaintiff's allegation sufficiently describes the alleged role Defendant Scribner had in violating his rights and advises Defendant Scribner against what he must defend.

**C. Defendant Scribner is Not Entitled to Protection Under Qualified Immunity**

Defendant Scribner claims that he is entitled to qualified immunity from civil damages brought by

Plaintiff in his complaint. (Doc. 16-2, at 10.) A qualified immunity analysis is a two-step inquiry. <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001). The first step is determining whether, under the facts alleged by the plaintiff, was there a violation of a constitutional right. <u>Id.</u> If a violation of a constitutional right is established, the second step is whether the right was clearly established. <u>Id.</u> A right is clearly established when it is clear to a reasonable officer that his conduct was unlawful in the applicable situation. <u>Id.</u> at 202.

Defendant Scribner's argument fails the first prong of the <u>Saucier</u> test. Plaintiff's factual allegations do not merely allege that Defendant Scribner transferred him to RJD per a court order; rather, Plaintiff expressly alleges that Defendant Scribner intentionally transferred Plaintiff to a housing unit in RJD without access to a law library to prevent Plaintiff from effectively litigating his civil suit. (<u>See</u> Doc. 5, at 6.) Hence, if the allegations are established to be true, Defendant's actions would be in clear violation of Plaintiff's First Amendment right of access to the courts. <u>See</u> <u>Phillips v. Hust</u>, 477 F.3d 1070, 1073 (9th Cir. 2007) (holding that denial by prison officials of access to legal materials "constitutes a denial of an inmate's right of access to the courts where it results in the loss of a legal claim").

Defendant Scribner fails the second prong of the <u>Saucier</u> test as well. Under the fundamental First Amendment right of access to the courts, prison authorities are required to assist inmates by providing prisoners with "adequate law libraries or adequate assistance from persons trained in the law." <u>Bounds v. Smith</u>, 430 U.S. 817, 828 (1977); <u>Lewis v. Casey</u>, 518 U.S. 343, 350 (1996) . In <u>Phillips v. Hust</u>, 477 F.3d 1070, 1080 (9th Cir. 2007), the Ninth Circuit, citing <u>Bounds</u> and <u>Lewis</u>, found that there was sufficient legal precedent to indicate that "a reasonable officer would know that failing to provide access to [material items] needed to prepare ... court documents would ... frustrate prisoner's litigation efforts." <u>Phillips</u>, 477 F.3d at 1079-1080. Given the court's holding in <u>Phillips</u>, it follows that a reasonable officer would know that transferring an inmate to housing unit without access to a law library would hinder the inmate's pending litigation. Taking Plaintiff's factual allegations to be true, as required under the applicable standard of review, a reasonable officer in Defendant Scribner's situation would have known that transferring Plaintiff to a restricted housing unit, inconsistent with his prisoner classification, would have been a violation of Plaintiff's constitutional right of access to the courts.

1  Thus, Defendant Scribner is not entitled to protection under qualified immunity.

2  **D. All First Amendment Denial of Access Claims Should Be Dismissed**

3  Defendants Scribner, Cobb, Peterson, and Van Cleave each contend that Plaintiff has failed to
4  allege the elements necessary to plead a denial of access claim. (Doc. 16-2, at 11.) In order for a
5  prisoner to assert a successful denial of access claim where lack of access affected a pending civil suit,
6  he must describe "a 'nonfrivolous,' 'arguable' underlying claim . . . [and] identify a remedy that may be
7  awarded as recompense but not otherwise available in some suit that may yet to be brought."
8  Christopher v. Harbury, 536 U.S. 403, 415 (2002). To satisfy the non-frivolous requirement, the
9  underlying claim must be either a direct criminal appeal, habeas petition, or a civil rights claim to
10 "vindicate basic constitutional rights." Lewis, 518 U.S. at 354. Further, the plaintiff must plead the
11 underlying claim with the same level of specificity as if he were pleading it as an independent claim.
12 Christopher, 536 U.S. at 417-418.

13 In his FAC, Plaintiff fails to meet the requirements to state a denial of access claim under the First
14 Amendment. Plaintiff never describes the details of the pending civil suit for which he sought access to
15 legal materials necessary for a proper defense. Plaintiff neither pleads sufficient facts that the
16 underlying suit was nonfrivolous nor identifies a remedy sought or available in the underlying litigation
17 and that the available remedy is presently unique to that suit. Notwithstanding Plaintiff's contention
18 that his underlying suit is not frivolous due to the fact that the claim made it all the way to the trial
19 phase, (doc. 29, at 4), Plaintiff still must plead the underlying claim with the same level of specificity as
20 if he were pleading it as an independent claim. Thus, Plaintiff has failed to state a First Amendment
21 claim against any of the Defendants.

22 **E. All Sixth Amendment Denial of Self-Representation Claims Should Be Dismissed**

23 Plaintiff claims that Defendants violated his Sixth Amendment right of self-representation by
24 denying him access to the law library, and hence, frustrating his civil suit against officials at Calipatria
25 State Prison. (See Doc. 5, at 6-10, 15-18.) However, as Defendants correctly assert, the reach of the
26 Sixth Amendment extends "only to protected attorney-client relationship from intrusion in the *criminal*
27 *setting*." Wolff v. McDonnell, 418 U.S. 539, 576 (1974) (emphasis added). Hence, because the Sixth
28 Amendment is inapplicable to the underlying civil action described by Plaintiff, all Sixth Amendment

claims should be dismissed.

**D. Plaintiff Failed to Allege Compliance with the California Tort Claims Act**

California Tort Claims Act requires that a state law tort claim made against a public entity or its employees be first presented to the California Victim Compensation and Government Claims Board, formally known as the State Board of Control, no more than six months after the cause of action accrues. Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950-950.2 (West 2007). Before filing suit in state or federal court, a written claim must be made to the Board, and the Board must take action or reject the claim. State v. Superior Court of Kings County (Bodde), 32 Cal. 4th 1234, 1245 (Cal. 2004); Mangold v. Cal. Pub. Utilities Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995). To state a California Tort Claims Act claim under 42 U.S.C. § 1983, Plaintiff must allege compliance with the Act's exhaustion requirements. Mangold, 67 F.3d at 1477. As Plaintiff has not alleged that he has exhausted his state law tort claims at the state level of review, Plaintiff's state law claims should be dismissed for failure to state a claim.

**V.**

**CONCLUSION**

For the reasons set forth above, the Court recommends that Plaintiff's First Amended Complaint be dismissed.

This Report and Recommendation is submitted to United States District Judge Roger Benitez, pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(c) of the United States District Court for the Southern District of California. Any written objections to this Report and Recommendation must be filed with the Court and a copy served on all parties on or before **November 14, 2008.** The document should be captioned "Objections to Report and Recommendation." Any reply to the objections shall be served and filed on or before **November 21, 2008**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of this Court's order.

Martinez v. Ylst, 951 F.2d 1153, 1156 (9th Cir. 1991).

    IT IS SO ORDERED.

DATED: October 24, 2008

                                    Peter C. Lewis
                                    U.S. Magistrate Judge
                                    United States District Court

cc: District Judge Benitez; all counsel of record